UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Peter Lindner, Plaintiff

12 CV 02734

*(In the space above enter the full name(s) of the plaintiff(s).)*

**COMPLAINT**

-against-

1) Levine & Blit, Matt Blit, Esq., et al*
2) KDW, Jean Park, Esq., et al*
3) Skadden Arps, Joe Sacca, Esq.,et al*
4) American Express, Jason Brown, Esq.,et al*
5) KLF (Karaahmet Luz & Greenberg), Tom Luz, Esq., et al*
6) Hennigan, Bennet & Dorman; Omer Salik, Esq., , et al*
7) Price Waterhouse Coopers, Bob Moritz (Chairman), et al*

Jury Trial: ☒ Yes   ☐ No
(check one)

Defendants

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

I.   **Parties in this complaint:**

A.   List your name, address and telephone number. If you are presently in custody, include your identification number and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff   Name   Peter Lindner
           Street Address   1 Irving Place, Apt. G-23-C
           County, City   NY, NY
           State & Zip Code   NY 10003
           Telephone Number   Home/fax: 212-979-9647    cell:917-207-4962

B.   List all defendants. You should state the full name of the defendant, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1   Name   Matt Blit, Esq. and Leslie Levine, Esq.
                 Street Address   Levine & Blit, 350 Fifth Avenue, Floor 36

County, City <u>NY, NY</u>
State & Zip Code <u>NY 10018</u>
Telephone Number <u>212-967-3000</u>

Defendant No. 2   Name <u>Jean Park, Esq.</u>
Street Address <u>Kelley Drye Warren, 101 Park Ave</u>
County, City <u>NY, NY</u>
State & Zip Code <u>NY 10178</u>
Telephone Number <u>212-808-5019</u>

Defendant No. 3   Name <u>Joe Sacca, Esq.</u>
Street Address <u>Skadden, 4 Times Square</u>
County, City <u>NY, NY</u>
State & Zip Code <u>NY 10036</u>
Telephone Number <u>212-735-2358</u>

Defendant No. 4   Name <u>Jason Brown, Esq.</u>
Street Address <u>American Express General Counsel's Office, 200 Vesey Street</u>
County, City <u>NY, NY</u>
State & Zip Code <u>NY 10285</u>
Telephone Number <u>212-640-2000</u>

Other defendants on attached papers

**II.   Basis for Jurisdiction:**

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.   What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal Questions        ☐ Diversity of Citizenship

B.   If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? <u>Violation of NY Judiciary section 487 "intent to deceive" any court in NY State, and these lawyers all (at one forum or another) did so intend to deceive a federal Court and/or a NYCLA Arbirtration Group (which is to be determined whether a Court under section 487 or not). and ethics / legal/ perjury / malpractice issues</u>

C.   If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____
Defendant(s) state(s) of citizenship _____

**III.   Statement of Claim:**

State as briefly as possible the <u>facts</u> of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.

*Rev. 05/2010*

You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A. Where did the events giving rise to your claim(s) occur? New York City

B. What date and approximate time did the events giving rise to your claim(s) occur?
April 2009 through April 2011

C. Facts: Given the complexity of this case, the many people and the multiple, parallel and twisted situations, many of which could have resolved these issues if lawyers acted ethically and in accord with the law, I attach about 14 pages of documentation, including the partial list of the 50+ documents that attest to this case's fact

*What happened to you?*

*Who did what?*

*Was anyone else involved?*

*Who else saw what happened?*

4. Mr. Blit & Mr. Levine informed the NYCLA Arbitration Group they would abide by their decision within 91 days, however did not as over 300 days pay the $5,000 award to client Lindner. They also did not produce tape recordings which would have shown them in a bad light.

IV. Injuries: If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

Mr. Lindner suffered by having adverse court decisions, adverse SEC conclusions on the Lindner Shareholder Proposal of 2010, 2011, 2012. Also, the law remedies such lawyer "intent to deceive" by a criminal misdemeanor which would allow the parties to settle rather than risk suspension / disbarment. Also the law provides for treble damages in a separate lawsuit, which this lawsuit is, which would amount to the full damages for the EEOC lawsuits filed by Lindner against American Express and their officers, including their General Counsel's Office, which not only was a part to the "intent to deceive" in Court, but also in wrongly aiding in a cover-up of Qing's violation of the June 2000 Amex Lindner contract co-signed by Amex President Ash Gupta and Amex's General Counsel and Mr. Lindner, but also violations of Title VII of the 1964 Civil Rights Act which forbids retaliation and NYC and NY State Human Rights protections.

Rev. 05/2010

**V.     Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. 1. For Matt Blit, Esq. and Leslie Levine,. Esq. it is clear that they violated the NYCLA Arbitration Agreement with a client, which is more severe than with a colleague, and should thus be found guilty of "intent to deceive" any Court in NY State, to wit, the Arbitration Group which is run under the auspices of the NY Courts and also has subpoena power (as do Courts). This is a matter to be affirmatively decided by The Court, since the NYCLA is reluctant to give an opinion on this critical topic. Also, Mr. Blit and Mr. Levine must turn over the tape of the conversation requested during arbitration that shows Mr. Lindner asking for the alleged oral agreement to be suspended, since it had not met the 4 criteria of Ciarmella (e.g.: not in writing, normally in writing, no partial fulfillment are 3 of the 4). 2. Since Mr. Blit used deception to hide his relationship to Ms. Park, which may have also been of a sexual nature or financial though not necessarily, Levine & Blit should pay treble the Amex Settlement amounts, which is $500,000 lost pay, $1,000,000 emotional damages under NYC HR laws (double multiple as opposed to federal laws' single ), and punitive damages  3. Amex and their in-house and external counsel should be disbarred for refusal to take corrective action as Officers of the Court on writing & then saying that Amex did not stop Lindner from communicating to the SEC prior to 2009, when Ms. Park and Mr. Brown wrote that impediment against Mr. Lindner in 2007 as proven by Court transcript. 4. Lindner's paid videotape of Qing and Brown's admission of guilt should be returned to Lindner, with sanctions.

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this 2nd day of April, 20 12.

Signature of Plaintiff   /s/ Peter Lindner

Mailing Address   1 Irving Place, Apt. G-23-C

NY, NY 10003

Telephone Number   917-207-4962

Fax Number *(if you have one)*   212-979-9647

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.

**For Prisoners:**

I declare under penalty of perjury that on this ____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff: _____

Inmate Number _____

*Rev. 05/2010*

US District Court
Southern District of New York
Complaint

(continued from form rev 05/2010 on SDNY website)

Suit against malpractice and deceit

Monday, April 02, 2012 1:56 PM

Peter Lindner, Plaintiff

Versus

Defendants:
1. Levine & Blit, et al,* , c/o Matt Blit, Esq.
2. KDW et al, * c/o Jean Park, Esq.
3. Skadden Arps, et al, *, c/o Joe Sacca, Esq.
4. American Express, et al, *, c/o Jason Brown, Esq.
5. KLF (Karaahmet Luz & Greenberg), et al.,*, c/o Tom Luz, Esq.
6. Hennigan, Bennet & Dorman, et al*, c/o Omer Salik, Esq.
7. Price Waterhouse Coopers, et al*, c/o Bob Moritz, Chairman and Senior Partner

*Where "et al" includes all persons in that firm who were lawyers or paralegals working on the cases in question, including lawyers hired by named defendants (e.g. Levine & Blit's ethics attorney)

**Statement of the Question before the Court:**

1. To what extent must a lawyer go before he runs afoul of ethics, law or malpractice by ignoring the wishes of the client, deceiving the client, intending to deceive the Court, or failing to rectify an intent to deceive the Court or an outright perjury under oath?

2. This is a Dred Scott[1] moment, where universal principles must be called upon to supersede what is happening in the real world. Should there be sanctions and also stricter supervision / accountability to the normal leeway given to lawyers' "minor" mistakes, white lies, cover ups, or excesses in defense of their wronging client, when the innocent / aggrieved person suffers as a result of the lawyer's failure to truthfully speak to his client (for my paid lawyers) or to the Court (for my opposing lawyers)?

---

[1] This is where a right to justice is denied by the Court, despite massive evidence to the contrary and the wishes of the people and of the legislature.
" The United States Supreme Court decided 7-2 against Scott, finding that neither he nor any other person of African ancestry could claim citizenship in the United States, and therefore Scott could not bring suit in federal court under diversity of citizenship rules. Moreover, Scott's temporary residence outside Missouri did not bring about his emancipation under the Missouri Compromise, which the court ruled unconstitutional as it would improperly deprive Scott's owner of his legal property. "
http://en.wikipedia.org/wiki/Dred_Scott

1

**Situations in 06cv3834 *Lindner v American Express and Qing Lin***

This case is a "collections" issue, where my former lawyer Matt Blit, Esq. lost a compulsory arbitration that his retainer ( Exhibit 1 Matt Blit, Esq. Retainer for Peter Lindner) specified, and then refused to pay even after 1 year, forcing me to go to Court, which compulsory arbitration is **designed** to avoid.  I suggest here that both my lawyer and the NYCLA who sponsored the Arbitration are remiss in not having adequate safeguards to compel payment upon my victory (Exhibit 2 "Arbitration Award of $5k to Lindner).  For instance, the NYCLA could have referred all non-payments after day 91 to the NYCLA (NY County Lawyers Association) for suspension of membership (perhaps automatically), sanctions such as treble damages, and possible loss of the privilege of being an Officer of the Court.

What is a pro se litigant to do when not only the opposition lawyers fight him in ways unfair and seemingly illegal, but that my own paid lawyers (Tom Luz, Esq. and later Blit & Levine) seek to bend or break ethical, legal and moral standards to their benefit rather than to my specific orders?  One example is that I instructed Mr. Luz to withdraw consent for the alleged oral agreement of April 2007, and he denied getting my fax, citing faxes he got before and after the time I said I sent it, yet I have proof of successful transmission (Exhibit 4 request for faxes received by Tom Luz) of said fax, and Mr. Luz did not provide any documentation of received faxes even when requested (Exhibit 4 request for faxes received by Tom Luz) in NY State Court, as best I can recall.

Another example is that Tom Luz violated an explicit order (Exhibit 5 Email to Luz on billable hours) from me not to do any work with my adversary Jean Park, Esq. of KDW (Kelley, Drye Warren) unless he got my approval in writing, let alone sign a secrecy agreement (Exhibit 6 secrecy agreement signed by Luz and Jean Park, Esq. without Lindner permission)  against my wishes (Exhibit ___).  And then ex post facto, Luz writes (Exhibit 7 ex post facto Luz urges my acceptance of secrecy agreement) me to approve said secrecy agreement.
Also Luz and Mr. Luke Tynan , Esq. ( associate / lawyer for Mr. Luz), both not only intended to deceive The Court in NY State by falsely saying (Exhibit ___) that they immediately  corrected (Exhibit ___) their violation of an ORDER(Exhibit ___), but Mr. Tynan then admitted it. (Exhibit ___), which actually they knew about for a day (Exhibit___).

Another example or two of breaking my explicit instructions were my instructions both in writing (Exhibit 8 Lindner email to Levine & Blit limiting mediation to 1-2 hours") and orally on the way to the mediation, in front of his associate Russell Moriarity.  The negotiations ran on for 6 hours without any breaks for food/water/medicine, which I take for ADHD (Attention Deficit Hyperactivity Disorder) and which affects my ability to think, and concentrate, and make clear, informed decisions.  And Blit ignored my request that I do not speak in the mediation, and that he do, since the other parties' principles were not present; but Blit would then keep asking me in front of Magistrate Judge Katz to explain my principles, negotiating stance, and even the law (e.g. NY Judiciary §487 on "intent to deceive" any Court in NY State, which MJ Katz was unfamiliar with and did not believe me that a law could award treble damages, by expressing his view that there was no mechanism to do so. )  Surely a layman should not have to argue the law and precedents to a Judge when I was paying a lawyer to do so – this alone is a breach of contract and of ethics.  Also, the alleged oral agreement of or about Nov2010 contained penalties

2

for me if I broke the alleged oral agreement that included the amount Amex paid to the lawyers, instead of just the amount I alone was paid: this would not have slipped through my view if I had been able to read and review the document before signing it, with my medication (Ritalin) and without Matt Blit's haste to close the agreement so that he could get 100% probability of being paid without the work of going to trial, at which point he would receive no extra cash, but only the expenditures for his time out of his own pocket and the **chance** of winning the case and getting paid.

And Blit's refusal to withdraw the alleged oral agreement (Exhibit 9 Blit's refusal to withdraw from the alleged oral agreement of Nov 2010) on or about Nov2010, despite the fact that precedents in SDNY and more specifically ruled on by USDJ Koeltl in my case a few years earlier (Exhibit 10 USDJ Koeltl Ruling on alleged oral agreement of April 2007 as nonexistent). And Blit refusing, but then agreeing to hand my documents / speech to the Court, upon the advice of his "ethics" counsel taken to the meeting with USDJ Griesa and Amex, but neglecting (accidentally? on purpose?) to give said documents to the Court. Also, Levine & Blit refused to hand over the several hour tape shortly after the alleged oral agreement of Monday after the Thursday agreement. And Mr. Blit was formally advised in my email of Monday, November 15, 2010 9:45 AM (Exhibit ___) where I said his accusing me of lying on the Ritalin was baseless and an intent to deceive the Court, and I gave Matt permission (Exhibit __) to call my psychiatrist to confirm the effect of Ritalin on me, which he chose not to do, presumably since then he would be unable to call me a liar.

Sometimes, I have observed, Courts consolidate many cases in order to achieve "judicial efficiency", so I lump together with my lawyers' misconduct together with misconduct by my opponents' lawyers. I also have misconduct against my adversary lawyers in 06cv4751 *Lindner v IBM, et al.*, which I seek a ruling to include in this suit, since they all deal with the central question, which I posit as follows:

> " Should there be sanctions and also stricter supervision / accountability to the normal leeway given to lawyers' "minor" mistakes, white lies, cover ups, or excesses in defense of their wronging client, when the innocent / aggrieved person suffers as a result of the lawyer's failure to truthfully speak to his client (for my paid lawyers) or to the Court (for my opposing lawyers)?"

In the IBM case, the lawyers did not provide Electronically Stored Information (ESI) in discovery (Exhibit 11 IBM telling Court on not revealing Electronically Stored Information (ESI) to Plaintiff), and concealed their sources of relevant information (Exhibit 11 "IBM sexual harassment suit" that mentioned I was unfairly punished for my alleged sexual harassment for a sexual liaison between a male manager and his (married) female employee), and purposely omitted critical documents (Exhibit 12 The Janik Letter: relevant proof of communication by IBM to Wunderman) that ran counter to IBM's assertion that no one at IBM had been asked about my employment for Wunderman Associations. IBM also used trickery and deceit to stop me from deposing the named defendants (a. Heather Christo Higgins, who may have also violated IBM policy on sexual involvement a1. with her boss – and mine--Mr Higgins, as well as a2. her sleeping with a subordinate on her team while the 3 of us were in the same group, and b. Bob Vanderheyden who was on my team). IBM also may have violated with impunity the

3

ORDERs of a Magistrate Judge Eaton – no longer on SDNY – despite clear rules on handling discovery disputes in writing unless there are critical moments, such as a witness being deposed at the moment.

Matt Blit also was reluctant (Exhibit 13Transcript excerpt showing reluctance of Matt Blit, Esq. to take oath before USDJ Griesa , as 3 sides) to take an oath during the last meeting with USDJ Griesa, which then USDJ Griesa administered (Exhibit 14Oath administered by USDJ Griesa to Matt Blit, Esq) and which then Blit violated (Exhibit 15 Blit alleged violation of oath, characterizing laugh as cough to hide communications with adversary J.Park, Esq), and which I found out via a participant (who shall remain nameless, so I'll call her Ms. Mary Smith) at the meeting who has made an affidavit (Exhibit 16 Affidavit of Ms. Mary Smith (pseudonym) attesting to Blit laugh and silent conversation between adversaries) attesting to the lie of Matt Blit. This can be affirmed by taking depositions from a hostile witness, Jean Park. When someone, when an Officer of the Court, knowingly lies after swearing an oath, it is not a trivial matter, anymore than when a person claims that no one else is in their apartment or that there's nothing in their car trunk. It is that the lie itself should be punished immediately, and then gone into to discover if there was a method behind this madness. And madness it is if a lawyer feels secure enough to lie in front of a judge with other witnesses, perhaps using the "it's my word versus theirs" type thinking. I see evidence of that when Matt threatened me if I recorded his phone call where he said (Exhibit 17 Matt threatens Lindner if Lindner records call, and then uses derogatory expression on client Lindner) I could crawl back into the hole where I came from after he paid me the $5,000 Arbitration Award (Exhibit ___), which he then did not do. The $5k award was not conditioned upon me signing any document, and by rights should have been paid on day 91, when the arbitration rules (Exhibit 18 Arbitration rules requiring payment can only be delayed to 30 or 90 days is appealed or requesting voiding ) specified that no further disputes could be entertained by the Courts.

Mr. Blit (married) and Ms. Park (marital status unknown) may have had a date / sexual relationship / romantic encounter, since Mr. Blit evidenced an interest in Ms. Park sexually to me, which I believe I warned him about, and Ms. Park and Mr. Blit did share a secret, silent conversation in Court before USDJ Griesa which they / he denied, as Ms. Mary Smith solemnly swore an oath on. I believe if an Officer of the Court observes a lie by her adversary, it would or should be her duty under the law and ethics to point that out to the Court as it happened in real time: the record shows no such volunteering of impeaching Mr. Blit's wrongful statement of it being a cough and not a laugh, and then they both (as Ms. Smith asserted) stopped their silent conversation. And why are Park, Blit, Levine, Moriarity and the "ethics consultant" called "Officers of the Court", if their allegiance is to each other instead of to the Court? If one of them had stolen an item, and was observed by a Court guard, wouldn't the guard report that to the Judge immediately? Or would he stand by silently as the thief denied he had taken anything? Thus, these people should have immediately alerted the Judge that Matt was lying when he said he "coughed", and the most obvious choice is Jean Park herself. Matt should have corrected the record to USDJ Griesa after a copy of the sworn affidavit of Ms. Smith was given to him. As of now, none of the participants have corrected the record, as far as I know. In the Virginia Tech massacre, only 2 of the many families of injured and killed students have gone to Court, and now luckily they all will find out the "central question" [Exhibit 18 c, Washington Post] of why the University did not alert students that 2 students had been killed, and why they did not apologize.

4

I await why Ms. Park did not turn in Matt Blit at the hearing immediately as Matt lied, and why she has not done so yet.

I proposed to Mr. Blit (Exhibit 19 Lindner proposes "Monica Lewinsky Agreement" with Levine & Blit, in lieu of pressing charges) that he sign a "Monica Lewinsky" document that would require him to tell the whole truth, and thus save his license by me not filing charges against him for violating NY Judiciary §487 on "intent to deceive" any Court in NY State. Mr. Blit treated it as a joke (Exhibit ____). I wanted it to be signed by a Judge, who would make the document's terms effective upon a violation, omission, cover up, or effort to protect another person (e.g. Ms. Park's family or Mr. Blit's family or Mr. Levine). Instead, when I insisted I was serious, I was written by Levine & Blit that if I communicate with them again, I would charged with "Aggravated Harassment". All this instead of merely paying the $5,000 as required by the retainer's compulsory arbitration clause.

I hereby request a ruling upon whether the NYCLA Arbitration Panel is considered "any Court in NY State" as per NY Judiciary §487 (Exhibit 20 NY Judiciary §487 on "intent to deceive" any Court in NY State) on "intent to deceive" any Court in NY State. I not only request said ruling for myself, but also for the NYCLA, which has repeatedly refused to even reply as to what they are: this is amazing. A traffic court knows it is a Court; and it does not depend on the specifics of my arbitration, but rather a characteristic of the "charter' for the arbitration, which includes that it reports to the Court (Exhibit 21 Charter for Arbitration Group under NYCLA), and has subpoena power (Exhibit 22 Arbitration Group subpoena power), several characteristics of a Court, and perhaps decisive characteristics.

Given Ms. Park's stretching or breaking the truth, and not correcting the record when she was wrong, it is therefore wrong that Ms. Park was trusted to review evidence in my case (I believe it was my Amex personnel file folder) and then say that there was no evidence in it. Ms. Park cannot be trusted as an equal, let alone as an adversary, especially when there may be an error of omission (such as a document removed) which she may not zealously pursue in my favor.

In toto, there is a presumption that a lawyer will represent his client zealously, and will not cut corners, but will not prevaricate, nor lie to the client, nor renege on a written/verbal instruction of the client. And that the lawyer will tell the truth, and hopefully the whole truth, to his client, but also in NY State and SDNY, tell the unvarnished truth to the Court whether in defense of his paying client or to shoot down an opposing sides' viewpoints.

To this last point, I now bring Jean Park, Joe Sacca, Esq. of Skadden Arps and Amex General Counsel's VP Jason Brown, Esq.

Ms. Park not only intended to deceive the Court by alleging that Qing did not make any negative comments (Exhibit 23 Jean Park informing Court that Qing did not make negative references), when the June 2000 Amex-Lindner Contract (Exhibit 24 Paragraph 13 of June 2000 Amex-Lindner Contract on not giving "any information") specifically said "any information", but also that Ms. Park knew that Qing gave "any information" (Exhibit 25 Hand written note by Amex General Counsel's VP Jason Brown, Esq. containing quote from Qing to Boaz Salik, including negative information), but that Qing gave negative information (Exhibit ____) by saying that "I

5

don't think Peter Lindner can work at American Express", which is not only "any information" and "negative", but also untrue, since I could work at Amex as a consultant for FischerJordan. And Jason Brown then proceeded to cover up his Feb2006 verbal admission to me (Exhibit 27 Amex VP Brown, Esq. refusing to confirm and thus cover up verbal admission of violation by Qing), but then dropped any reference to it in his summary report(Exhibit 28Amex VP Brown, Esq. summarizing his "report" without including Qing's admission of violation of June 2000 Amex-Lindner Contract and of Title VII of the Civil Rights Act of 1964), which would also go to the person Secretary of the Corporation Stephen Norman, Esq. who commissioned Mr. Brown, Esq. to write that report on or about December 2005. This is especially heinous since Amex's General Counsel's Office co-signed with me and (now) Amex Banking President Ash Gupta the June 2000 Amex-Lindner Contract (previously mentioned, Exhibit 23, last page ): a lawyer should not observe and cover up his firm's misconduct in official documents, and in the process, also break the Amex Code of Conduct (Exhibit 29 Amex Code of Conduct which requires reporting past / present / future ethical / legal questions to one's manager, who will report it to Secretary of the Corporation Stephen Norman, Esq.) on prompt reporting and correcting possible ethical and legal violations (it was a violation of both the June 2000 Amex-Lindner Contract and of Title VII of the Civil Rights Act of 1964 on retaliation). This compounds itself in that the Amex Code of Conduct ("Code") was submitted to the Securities and Exchange Commission (SEC) under Sarbanes-Oxley (SOX) as a true document, personally signed as true and binding to all members of Amex, by its then and current CEO Ken Chenault, Esq. (Exhibit 30 SOX Compliance certified by Amex CEO Ken Chenault, Esq., filed with Securities and Exchange Commission). Mr. Chenault then did not give full and non-misleading disclosure to the Shareholders (Exhibit 32 Excerpt of Amex Shareholder meeting where CEO Ken Chenault, Esq. denies wrongdoing of Amex VP) in several Amex Shareholder meetings, which he should then (Exhibit 33 Second Excerpt of Amex Shareholder meeting where CEO Ken Chenault, Esq. denies wrongdoing of Amex VP, even after Qing was removed, and General Counsel VP Brown Esq. admitted coverup) have conceded that his previous comments defending how the Code was enforced was not working, if the VP reporting to the Amex Banking President could break a law, a contract and the Code and be aided in that by the co-signatory General Counsel's Office, and perhaps also by the errant VP's direct manager of 15 years, Banking President Ash Gupta (not a lawyer).

Similarly, Omer Salik knew that his brother Boaz Salik had filed false statements intended to deceive the Court, and had conspired with Trevor Barran, when Trevor specifically had a conversation with me relating what Qing had told Boaz. They conspired to deprive me of the truth, and Qing either lied when he said he spoke to Boaz Salik, or Boaz and Trevor lied when they did not recall being told that. The motivation of Salik of HBD and Salik / Barran of FischerJordan was to protect Qing from exposure, and to prevent Qing and Amex from retaliating against Fisher Jordan by stopping the flow of contracts and money coming from Amex's Risk Management group controlled by Qing. So, given that the pro hac vice was extended to Omer Salik under the proviso that there are "no pending disciplinary proceedings against Omer Salik" in Pacer Document 102 filed 12/16/2008, there should be disciplinary proceedings begun to stop Omer from repeating this behavior in other venues. Here's the excerpt from the letter:

Document 102 Filed 12/16/2008 Page 1 of 8

Omer Salik is a member in good standing of the Bar of the State of California. There are no pending disciplinary proceedings against Omer Salik in any State or Federal Court.

Dated: December 15, 2008.

By: /s/ Rebecca T. Pilch
Rebecca T. Pilch
(NY Bar No.: RP2798)

Hennigan Bennett & Dorman, LLP
865 South Figueroa St., Suite 2900
Los Angeles, California 90017
Tel: (213) 694-1200
Fax: (213) 694-1234

Basically, this is the classic game theory situation of the "Prisoner's Dilemma", where two prisoners are offered a deal separately, and if they both agree, they both go to prison for a long time; and if they both refuse, they may escape prison altogether; but if one agrees and the other refuses, then the one who agrees gets no jail time and the other gets a very harsh sentence.

**Timing and Coordinating Stories**

There are perhaps several instances where a timely admission of wrongdoing would have

1. Luz admitting he got a fax from me that I withdraw from the alleged oral agreement of April 2007
2. Brown admitting in or about Feb2006 that Qing violated the June 2000 Amex-Lindner Contract
3. Park admitting to USDJ Griesa that Blit did indeed laugh at her silent, pantomimed conversation, and not cough as Blit said under oath
4. Blit on turning over to the Arbitration group the tape recording of the Monday after the alleged oral agreement
5. The NYCLA correctly informing me that the session was a single day, and that I could subpoena Park and Ms. Smith, as well as subpoena the tape recording of Blit, and have Blit be aware that the Arbitration group was "any Court" as per NY Judiciary §487 on "intent to deceive" any Court in NY State – I'm asking this court to make the conclusive ruling on this point
6. Ken Chenault being told by the General Counsel's Office in Feb 2006 or in Jan 2009 that Qing admitted to breaking the June 2000 Amex-Lindner Contract, and that Jason Brown, Esq. of Amex's General Counsel's Office helped cover it up in April 2006, which would stop CEO Chenault from falsely certifying SOX compliance to the SEC, and admitting that the Amex "Code" was not working, since it took 4 years and tens of thousands of my dollars to reach that point

7

In this situation in 06cv3834 *Lindner v American Express and Qing Lin*, Qing/Brown from Amex and Salik / Barran from FischerJordan were not allowed to speak to coordinate stories, so Salik/Barran both refused to admit that they spoke to Qing and got a negative reference, whereas Qing/Brown both admitted speaking to Boaz Salik and giving a negative reference "I don't think Peter Lindner can work at American Express", where just speaking to FischerJordan's Boaz Salik would have violated ¶13 of the June 2000 Amex-Lindner Contract.  Hence, Qing and Brown escaped perjury charges, but now that leaves Boaz Salik and Trevor Barran of FischerJordan open to perjury and their lawyer (brother of Boaz Salik) HBD's Omer Salik open to conspiracy and intent to deceive, and possible other violations of ethics and laws.  In fact, had Jason Brown in Feb 2006 confirmed, instead of denying, telling me that Qing said "I don't think Peter Lindner can work here" .  I recall the exact words since Brown used the word "here" instead of "American Express" in that conversation, whereupon I said: "You mean just because I can't get a green card, they won't hire me?", and Brown said "You can't get a green card [to work in the USA]?" and I said, "No, I was born in NYC, but if someone says you can't work here, what would it mean but a negative reference? (words to that effect).  So, if Brown had informed the Court (or at that point it was not in Court and was to be told to Secretary of the Corporation Stephen Norman, Esq. ), then Boaz and Trevor would not have been in the position to have denied the conversation, since we would have the timely admission of Brown (Feb2006), and the 6-month later belated admission of Qing (thereafter in Mar2006, instead of July/August 2005 when first posed by Lindner to Brown, and not at the late date of Jan2009 under oath, some 3 ½ years later).

In parallel, if Ms. Park had told USDJ Griesa that Matt Blit had laughed at their silent conversation immediately, then we could have avoided including the affidavit of Ms. Mary Smith, or including the other mute members of Matt's legal team including Levine and their hired ethicist, whose ethics now come under question.  The Ethics advisor should have also advised Matt to follow through on his promise to present my documents to USDJ Griesa, which the advisor brokered between me and Matt prior to the hearing, whilst in the Courtroom awaiting USDJ Griesa, and also witnessed by Ms. Smith.

Mr. Sacca wrote in his brief (Exhibit 34 Park and Joe Sacca, Esq. write Court that Lindner was not stopped from communicating to SEC prior to 2009), with co-counsel Jean Park, that Amex did not attempt to stop me from communicating with the SEC prior to 2009, when in fact Amex had done so in the alleged oral agreement of April 2007. I corrected them (Exhibit 35 Lindner corrects Sacca in open Court, where Jason Brown, Esq. and Jean Park, Esq. sat with Sacca and Sacca continues denial), but they repeated that assertion as the authors of the alleged oral agreement of April 2007 Mr. Brown, Esq. and Ms. Park, Esq. sat at the Defendants' Table with Mr. Sacca.  I tried to reason with Mr. Sacca (Exhibit 36 Lindner email to try to reason with Sacca, if Sacca had been hoodwinked by colleagues / co-counsels), but Mr. Sacca did not correct the false information he provided to the Court, thus transforming himself from a hapless pawn used by Amex and Ms. Park to an active co-conspirator.

### Ms. Park's Reckless Words about Lindner and Coverup Conspiracy

Ms. Park also falsely and without foundation told the Court that I was dangerous – which even the defendants said was not true, that they did not fear me (Exhibit 37 Jean Park falsely

8

inflaming Court by alleging Lindner was dangerous), which of course would have vitiated my entire case if I "acted out" in violence during a Court proceeding.

Ms. Park also falsely told the Court that she had not received prior notice of my video deposition (Exhibit 39 Park alleging no prior notice on video deposition location) and was only told at the last minute, when in fact I had emailed her the week before (Exhibit 40 Email of Lindner re-sent to Park to confirm authenticity for KDW Information Technology group). Ms. Park doubted my word, and when I sent the email again, so her firm's IT (information technology) people could confirm the authenticity, Ms. Park did not correct the false impression that she gave to the Magistrate Judge.

Ms. Park repeatedly denigrated me as a "time waster" (Exhibit 41 Listing of "time waster" litany by Park in Qing Deposition and in Brown Deposition for 10 – 15 times), when in fact Ms. Park wasted time interrupting me during depositions (e.g. refusing to allow Qing Lin to state what his name is, and when I escalated it to the Judge, she withdrew her objections, but I asked the Judge to compel named defendant Qing to answer this trivial question). (Exhibit 42 Park instructing Qing not to give his full name). Ms Park then turned the matter on its head, by successfully misrepresenting this to the Judge, and getting the deposition shortened by 1 hour (from 7 hours to 6, I believe), even though Ms. Park deposed me for not only 7 full hours, but then did so on additional extensions due to the inexperience / naivety of (not in this suit) lawyer who relied upon his adversary's word, rather than know or even check out the law.

Worse than that, Ms. Park and Amex embarked on a scheme (Exhibit 43 Park requesting and getting ORDER depriving Lindner of 4th Amendment protected Deposition Videos) to violate my 4th Amendment rights to property by denying me access to my videotapes of depositions of admitted guilt by named defendant Qing and by co-conspirator Amex General Counsel's Office VP Jason Brown. I request a ruling on whether The Court can seize my paid for property in order to stop Amex from having to deal with the facts and publicity that their side conspired successfully for 7+ years to keep this information from the public, the Amex Shareholders and the US Securities and Exchange Commission.

Ms. Park also tried to shield both Secretary of the Corporation Stephen Norman, Esq. and Banking President Ash Gupta from depositions by falsely stating (Exhibit 44 Park wrongly informing Court that Amex Banking President Ash Gupta had no connection with the June 2000 Amex-Lindner Contract) that Mr. Gupta "similarly" had nothing to do with the June 2000 Amex-Lindner Contract, when in fact Mr. Gupta's name was about 10 times in said Contract, and that Mr. Norman indeed spoke to me about the situation several times and then ordered (Exhibit 45 Lindner email with Secretary of the Corporation Stephen Norman, Esq. on 2nd investigation) Jason Brown to investigate it a second time. This insulated the supposed safety valve / accountability provided for in Amex's Code given to the SEC in compliance with SOX, and then certified by Amex's Accountants (Exhibit 47 Certification by Price Waterhouse Coopers that Amex complied with GAAP) as complying with said regulations and Generally Accepted Accounting Principles (GAAP)[2] – which is false, since if a violation is detected, the CPA's

---

[2] Red flags are when a certain situation is uncovered, and then the CPA is required to dig deeper. Ultimately, the audited firm is evaluated as to whether a series of bad actions / transactions constitute proof of disregard of GAAP.

9

(Certified Public Accountants) should then dig deeper to determine if this was an isolated instance, or was a pattern of deceit and false reporting. The GAAP has had that principle since 1971 and still does. I wrote Price Waterhouse Coopers on Wednesday, May 04, 2011 7:58:29 PM (Exhibit 48 Whistleblower Lindner email and letter to Price Waterhouse Coopers on Wednesday, May 04, 2011 7:58:29 PM) reporting the violations, but they refused to act. I even visited them in person at their HQ at 300 Madison Avenue, NYC, but they refused both to see me or even schedule an appointment so I could present evidence to them of GAAP, SOX and SEC violations, and Amex Code violations.

These many and several lawyers did at various times, over several years, not only lie to the Court, but do so under oath, in violation of ethics, law, and supposedly self-enforcing systems.

**Collective Failure**

This brings me to the failure of the lawyers collectively and individually, as well as the failure of the Courts to hold them immediately accountable, and to the NYCLA to police their own memberships. There is a limit to what a pro se litigant can do, and that is illustrated by a last month attempt by me to collect the $5,000 from Matt Blit, by hiring another lawyer to call Mr. Blit who wrote that I would be prosecuted for "Aggravated Harassment" (Exhibit 49 Levine & Blit alleging "Aggravated Harassment " if I attempted to contact them to collect $5k dated 3/15/2012 4:13 PM) if I contacted him. That ad hoc collections lawyer asked Mr. Blit if he had any problems in paying the $5,000, and my lawyer said he was put on hold for a long while and hung up on. The nothing-if-not-consistent Levine & Blit said they must've been accidentally cut off, as opposed to being hung up on – after all, it's Levine & Blit's word against my lawyer's. But, I protested to my ad hoc collections lawyer that Mr. Blit has a chauffeur for his wife, so that $5,000 was not a problem – it was a spiteful and malicious act, which would tie me up on Court, when a cashier's check could have been hand-delivered a day after my ad hoc lawyer called.

Justice is fragile: if I can't depend upon my lawyer, upon the Court, upon the Bar Association, upon the laws regarding Officers of the Court's truthfulness and good intent, then how difficult must my life be? Justice delayed is justice denied. I have been fighting Amex and IBM both since 2005 – some 7 years – with their words and actions amount to stalling tactics rather than a meeting of minds or competing battles for the truth in front of a Court. I am reminded of Secretary of State Hillary Clinton's fear that Iran may be acting for delay rather than honestly in dealing with nuclear arms talks (Exhibit 50 Example of Iran allegedly using delay, as assessed by Secretary of State Hillary Clinton). IBM also used their deposition of me to foul ends by asking me sexually embarrassing questions (Exhibit 51 Two sexually embarrassing questions IBM raise solely to intimidate Lindner, unrelated to facts of case), and attempted to get me fired from my current job by asking who my manager was (Exhibit ___). IBM also sought and got an ORDER

---

" Investopedia explains 'Adverse Opinion'
Adverse opinions are not a good thing for companies because it implies wrongdoing. An adverse opinion is a red flag for investors and can have major negative effects on stock prices. Auditors will usually give a red flag if the financial statements are significantly different from generally accepted accounting principals (GAAP)."

http://www.investopedia.com/terms/a/adverseopinion.asp#axzz1qocFPzAm

from the Court to compel me to answer questions in a deposition without allowing me to object on any grounds, but to answer in full regardless of the objection (Exhibit ___). IBM also agreed to allow me to get depositions from 3rd party witnesses, and then reneged on it unilaterally (Exhibit ___), without following the rules of Magistrate Judge Eaton (previously listed as Exhibit ___).

These matters should not be muddled with another several years of delays, and refusals to get the lawyers and my adversaries to stand up in Court and in depositions to describe what happened, and say if what I say is true or not. I assure the Court that I surely wouldn't lie, or my adversaries would pounce on my words as evidence of insincerity or worse; one lawyer suggested to me that I don't write April 2007, but rather "on or about April 2007" so that the complaint doesn't get thrown out for a wrong date. Thus, I say that I am overwhelmed by the amount of documentation I must provide (upon advice of a lawyer who would not take this case, since he did not want to be associated with destroying another lawyer's career) – who said I should include documents for everything, even though only 1 of the 4 page SDNY Complaint form is for an explanation of the case.

### Secondary Summary / Outline of Allegations and Facts

1. Tom Luz
   a. Saying he did not get fax, when he did (Exhibit __ fax Confirmation)
   b. Refusing to research
   c. Not following Judge Koeltl's ORDER to continue being my lawyer until Luz was relieved by Court(Exhibit __ email to continue to represent me)
   d. Signing secrecy agreement with Jean Park against my wishes, and retroactively asking me to approve
2. Jean Park
   a. Asserting I was dangerous
   b. That I did not give her notice on videotaping
   c. Wrongly asserting that I was wasting time, and then cutting my time short by an hour
   d. Bamboozling my lawyer into multiple interrogations over 20 hours, instead of 7
   e. Saying that Qing did not say anything negative about me
      i. When she knew Qing did by
         1. Qing's statements to her
         2. Jason Brown's report
      ii. That ¶13 just said "any information"
3. Sacca & Brown & Park
   a. That I was not stopped from communicating with SEC by Amex prior to 2009
      i. When the alleged oral agreement was made in or about 2007
      ii. And I pointed that out in Court
      iii. And I did so to Sacca months thereafter, to get him to tell the Court that he misinformed the Court
   b. Brown covering up for Qing in
      i. A letter to me

11

  ii. Hiding copies to Secretary of the Corporation Stephen Norman
  iii. Not putting that as a point of contention in the "final" report circa Apr2006
4. Matt Blit
    a. Not stopping negotiations after 1-2 hours
        i. Matt was my lawyer
        ii. I couldn't bring cell phone with alarm into court house
    b. Did not do all of the talking, but had me explain NY Judiciary §487 on "intent to deceive" any Court in NY State to MJ Katz
    c. Recorded my conversation in his office without my permission
        i. And did not turn it in to Arbitration Board
    d. Did not follow law and precedent on alleged oral agreements in SDNY
    e. Did not hand my documents to USDJ Griesa
    f. Lied , while under oath, about laughing along with Ms. Park's gestures, that suggested a connivance between them
    g. Required Arbitration in retainer, but
        i. Did not provide forms
        ii. Did not provide evidence
        iii. Refused to pay $5,000 award, for over 11 months,
            1. when agreement said arbitration is final
            2. and Arbitration group said 30 days to appeal, 90 days to void
    h. insulted me in his conversation, in violation of the retainer

12

## Table of Exhibits:

1 Matt Blit, Esq. Retainer for Peter Lindner
2 Arbitration award of $5k for Peter Lindner against Levine & Blit
3 Proof of successful Fax transmission to Tom Luz, Esq.
4 request for faxes received by Tom Luz
5 Email to Luz on billable hours
6 secrecy agreement signed by Luz and Jean Park, Esq. without Lindner permission
7 ex post facto Luz urges my acceptance of secrecy agreement
8 Lindner email to Levine & Blit limiting mediation to 1-2 hours
9 Blit's refusal to withdraw from the alleged oral agreement of Nov 2010
10 USDJ Koeltl Ruling on alleged oral agreement of April 2007 as nonexistent
11 IBM telling Court on not revealing Electronically Stored Information (ESI) to Plaintiff
12 The Janik Letter: relevant proof of communication by IBM to Wunderman
13 Transcript excerpt showing reluctance of Matt Blit, Esq. to take oath before USDJ Griesa
14 Oath administered by USDJ Griesa to Matt Blit, Esq
15 Blit alleged violation of oath, characterizing laugh as cough to hide communications with adversary J.Park, Esq
16 Affidavit of Ms. Mary Smith (pseudonym) attesting to Blit laugh and silent conversation between adversaries
17 Matt threatens Lindner if Lindner records call, and then uses derogatory expression on client Lindner
18 Arbitration rules requiring payment can only be delayed to 30 or 90 days is appealed or requesting voiding
19 Lindner proposes "Monica Lewinsky Agreement" with Levine & Blit, in lieu of pressing charges
20 NY Judiciary §487 on "intent to deceive" any Court in NY State
21 Charter for Arbitration Group under NYCLA
22 Arbitration Group subpoena power
23 Jean Park informing Court that Qing did not make negative references
24 Paragraph 13 of June 2000 Amex-Lindner Contract on not giving "any information"
25 Hand written note by Amex General Counsel's VP Jason Brown, Esq. containing quote from Qing to Boaz Salik, including negative information
26 alleged oral agreement of April 2007 which was to have changed June 2000 Amex-Lindner Contract by forbidding working for Amex as a contractor
27 Amex VP Brown, Esq. refusing to confirm and thus cover up verbal admission of violation by Qing
28 Amex VP Brown, Esq. summarizing his "report" without including Qing's admission of violation of June 2000 Amex-Lindner Contract and of Title VII of the Civil Rights Act of 1964
29 Amex Code of Conduct which requires reporting past / present / future ethical / legal questions to one's manager, who will report it to Secretary of the Corporation Stephen Norman, Esq.
30 SOX Compliance certified by Amex CEO Ken Chenault, Esq., filed with Securities and Exchange Commission
31 Letter to Chairman of Price Waterhouse Coopers on Wednesday, May 04, 2011 7:58:29 PM
32 Excerpt of Amex Shareholder meeting where CEO Ken Chenault, Esq. denies wrongdoing of Amex VP
33 Second Excerpt of Amex Shareholder meeting where CEO Ken Chenault, Esq. denies wrongdoing of Amex VP, even after Qing was removed, and General Counsel VP Brown Esq. admitted coverup
34 Park and Joe Sacca, Esq. write Court that Lindner was not stopped from communicating to SEC prior to 2009
35 Lindner corrects Sacca in open Court, where Jason Brown, Esq. and Jean Park, Esq. sat with Sacca and Sacca continues denial
36 Lindner email to try to reason with Sacca, if Sacca had been hoodwinked by colleagues / co-counsels
37 Jean Park falsely inflaming Court by alleging Lindner was dangerous
38 Mr. Brown, Esq. admitting Lindner was not dangerous, nor feared by him
39 Park alleging no prior notice on video deposition location
40 Email of Lindner re-sent to Park to confirm authenticity for KDW Information Technology group
41 Listing of "time waster" litany by Park in Qing Deposition and in Brown Deposition for 10 – 15 times
42 Park instructing Qing not to give his full name
43 Park requesting and getting ORDER depriving Lindner of 4th Amendment protected Deposition Videos

44 Park wrongly informing Court that Amex Banking President Ash Gupta had no connection with the June 2000 Amex-Lindner Contract
45 Lindner email with Secretary of the Corporation Stephen Norman, Esq. on 2nd investigation
46 Email on or about July/Aug 2005 of Jason Brown denying Qing alleged violation
47 Certification by Price Waterhouse Coopers that Amex complied with GAAP
48  Whistleblower Lindner email and letter to Price Waterhouse Coopers on Wednesday, May 04, 2011 7:58:29 PM
49 Levine & Blit alleging "Aggravated Harassment " if I attempted to contact them to collect $5k dated 3/15/2012 4:13 PM
50 Example of Iran allegedly using delay, as assessed by Secretary of State Hillary Clinton
51 Two sexually embarrassing questions IBM raise solely to intimidate Lindner, unrelated to facts of case
52 Lindner informing Luz to continue being lawyer until relieved by Court, and replying he chooses not to
53 SDNY Rules prohibiting cell phones in Courthouse, thus preventing Lindner from timing mediation
54 Levine & Blit refusing to provide Arbitration forms, as required by retainer